# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# MIDLAND DIVISION

| | |
|---|---|
| ANA CAROLINA SERRANO,<br>*Plaintiff*,<br><br>v.<br><br>CONSUMER FINANCIAL PROTECTION BUREAU, and ROHIT CHOPRA, in his official capacity as Director of the Consumer Financial Protection Bureau,<br>*Defendants*. | CIVIL ACTION NO. 1:23-cv-979 |

## COMPLAINT, REQUEST FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR TEMPORARY INJUNCTION

**COMES NOW,** Ana Carolina Serrano, hereinafter referred to as Plaintiff, by and through her attorney of record, and brings this action for equitable relief against Defendants, the Consumer Financial Protection Bureau (hereinafter, the "CFPB") and Rohit Chopra, in his official capacity as Director of the CFPB, hereinafter collectively referred to as Defendants, and in so doing would show unto the Court the following:

## I. PRELIMINARY STATEMENT

In *Consumer Fin. Prot. Bureau v. All Am. Check Cashing, Inc.*, 33 F.4th 218, 236 (5th Cir. 2022) the fifth Circuit declared the funding mechanism for the CFPB unconstitutional. In her concurrence to the opinion, Circuit Judge Edith Jones noted that as an agency, "the CFPB is unique: it is a fully self-funded agency with vast rulemaking, enforcement, and adjudicative authority." *See, Consumer Fin. Prot. Bureau v. All Am. Check Cashing, Inc.*, 33 F.4th 218, 236 (5th Cir. 2022). The combination of these rulemaking, enforcement, and adjudicative powers

makes Congress' appropriations power one of the few checks on the agency's power. Whether the current funding mechanism, whereby the CFPB is not subject to annual Congressional appropriations is constitutional, is currently unsettled.

The Fifth Circuit has found that the current funding mechanism violates the Appropriations Clause in their recent decision in *Cmty. Fin. Servs. Ass'n of Am. v. Consumer Fin. Prot. Bureau*. In this decision, the Court found that the CFPB's self-funding mechanism relinquishes Congress' funding power (and the associated check on the executive branch) and therefore violates the Appropriations Clause. Conversely, the Second Circuit found it does not violate the Appropriations Clause in their decision in *Consumer Financial Protection Bureau v. Law Offices of Crystal Moroney*. The U.S. Supreme Court granted certiorari in *Cmty. Fin. Servs. Ass'n of Am. v. Consumer Fin. Prot. Bureau* on February 22, 2023 and is currently set to hear oral arguments on October 3, 2023. The question presented will be:

> Whether the court of appeals erred in holding that the statute providing funding to the Consumer Financial Protection Bureau (CFPB), 12 U.S.C. 5497, violates the Appropriations Clause, U.S. Const. Art. I,§ 9, Cl. 7, and in vacating a regulation promulgated at a time when the CFPB was receiving such funding.

Petitioner is a foreign national who was detained by U.S. Immigration and Customs Enforcement (hereinafter, "ICE") in an ICE detention facility. Petitioner was able to secure her temporary release from the ICE detention facility through the services of Libre by Nexus, Inc. (hereinafter, "Libre"). Without the services of Libre, Plaintiff may have had to remain in the detention facility for an indefinite period of time while awaiting hearings and other determinations in her removal proceedings. This release from an immigration facility was secured through the issuance of a delivery bond by a third-party and this delivery bond was secured through an indemnification agreement, provided by Libre, to limit the bond issuer's risk.

On, or about, February 22, 2021, the CFPB and three states (the Commonwealths of Massachusetts and Virginia and the state of New York) brought suit against Libre (and its parent company Nexus Services, Inc as well as the owners, individually) to enjoin them from certain business practices and assess civil penalties as well as other damages in the Fourth Circuit[1]. A default judgment was entered against Libre in this matter on, or about, May 11, 2023. The CFPB and states are now seeking a judgment with total amounts equaling at least $357,796,860.00. If the CFPB and states are awarded and enforce such a judgment, it is the Plaintiff's belief that Libre will have to declare bankruptcy. If Libre is forced to declare bankruptcy due to the actions of the CFPB and states, Plaintiff believes that the delivery bond securing her continued release is likely to be revoked and "sold off." Because Plaintiff does not have the money to secure her own release, the likely result of this revocation would cause Plaintiff to be reincarcerated in an ICE detention facility for an indeterminate period of time. This indefinite detention would flow directly from the actions of the CFPB and be directly traceable to the expenditure of funds unconstitutionally "double-insulated" from the appropriations process.

This Court's intervention, a temporary restraining order, and a temporary injunction, enjoining the CFPB from expending funds obtained in violation of the Constitution and from enforcing any judgment rendered against Nexus, Libre, or its owners, until the Supreme Court renders their decision in *Cmty. Fin. Servs. Ass'n of Am. v. Consumer Fin. Prot. Bureau*, is needed to ensure that the CFPB and states do not cause the unnecessary and avoidable detention of Plaintiff by the use of an unconstitutionally obtained ruling.

---

[1] *Consumer Financial Protection Bureau et al v. Nexus Services, Inc. et al*; 5:21-cv-00016-EKD-JCH; U.S. District Court, Western District of Virginia (Harrisonburg).

## II. PARTIES

1. Plaintiff, Ana Carolina Serrano, is a resident of Midland County, Texas and at all times relevant hereto, resided in the city Midland, Texas.

2. Defendant, Consumer Protection Financial Bureau, is an agency of the United States, established by 12 U.S.C §5491(a).

3. Defendant, Rohit Chopra is the Director of the CPFB. Director Chopra is sued in his official capacity.

## III. JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction because this case arises under the Constitution and laws of the United States. *See*, U.S. Const. art III, §2; 28 U.S.C. §§1331, 2201; 5 U.S.C. §§701-706.

5. This Court is authorized to award the requested relief under 5 U.S.C. §706; 28 U.S.C. §1651(a); and 28 U.S.C §§2201-02.

6. Venue is proper in this district because Defendants include states and United States agencies and officers sued in their official capacities, a substantial part of the events or omissions giving rise to the claim occurred here, and because Plaintiff resides here, and no real property is involved in this matter. *See*, 28 U.S.C. §1391(e)(1).

## IV. FACTS

7. Plaintiff, Ana Carolina Serrano entered the United States from Honduras. *See, Exhibit* 1, *Affidavit in Support of Plaintiff's Complaint* at 1. Plaintiff resided in the United States without issue until she was detained by ICE on, or about, June 12, 2019. While in detention

Plaintiff's cousin, Selvin Alexi Barrera Barrera, contacted Libre regarding a delivery bond for Plaintiff. On, or about, January 12, 2020 Plaintiff's cousin, Selvin Alexi Barrera Barrera signed a contract with Libre on Plaintiff's behalf. *See, Exhibit 2, Libre Contract with Serrano.* This contract provided, in pertinent part, that Libre would help find a bail bond company for Plaintiff. The bond would be paid by a bail bond agent with whom Libre had an agreement regarding repayment of any bail related losses. The contract also noted that the surety company and the bail bond agent were separate entities from Libre. Based upon this contract, and their relationship with American Surety Company, Libre was able to obtain a delivery bond for Plaintiff's release from detention through the use of a surety bond with a third-party bonding company, which is duly registered with ICE and the State of Texas. *See, Exhibit 2* at 6.

8. Plaintiff's next hearing is currently scheduled for July 25, 2024. *See, Exhibit 3, Automated Case Information* at 1.

9. On, or about, February 22, 2021 the CFPB and the Commonwealth of Virginia, the Commonwealth of Massachusetts, and the state of New York filed suit against Libre; its parent organization, Nexus Services, Inc; and the owners of the LLCs, personally, alleging violations of 12 U.S.C. §5531(a), §5536(a)(1)(B), §5536(a)(3) and §5531(d) as well as similar state statutes. *See, Exhibit 4, Complaint*. On, or about, May 11, 2023 the US District Court for the Western District of Virginia (Harrisonburg) granted a default judgment against all of the defendants. *See, Exhibit 5, Civil Docket For Case # 5:21-cv-00016-EKD-JCH* at 37. The requested penalties assessed by the CFPB and states in this matter would amount to $357,796,860.00. *See, Exhibit 6, Plaintiffs' Memorandum in Support of their*

*Request for Evidentiary Sanctions, Injunctive Relief, Consumer Redress, and Civil Money Penalties* at 45.

10. On information and belief, Libre does not have the money to pay the civil fines and would be forced to file bankruptcy if those fines are imposed. Also, on information and belief, if Libre files for bankruptcy, it is likely that any bonds secured by their services would be revoked. And, on information and belief, if Plaintiff's delivery bond is revoked she can be taken into custody and detained until her hearing, causing her irreparable harm. *See, Exhibit 1* at 2.

## V. THE CFPB AND FEDERAL APPROPRIATIONS

11. Plaintiff, Ana Carolina Serrano, reiterates and adopts each and every one of the above paragraphs in the previous sections as if set forth herein.

### *A. The Appropriations Clause.*

12. Article I, Section 9, Clause 7, of the United States Constitution states:

> No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law; and a regular Statement and Account of the Receipts and Expenditures of all public Money shall be published from time to time.

13. The Appropriations Clause is essential to the separation of powers, as envisioned by the framers of the Constitution. The power over governmental spending, or, "the "power over the purse" was described by James Madison as the "most compleat and effectual weapon" in representing the interests of the people. *See, The Federalist No. 58*, at 394 (J. Cooke ed. 1961) (J. Madison); *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2203 (2020). Without the check of spending oversight by the legislative branch, this powerful arm of the executive branch has virtually no limit to its powers. In fact, the Appropriations

Clause stands as "a bulwark of the Constitution's separation of powers among the three branches of the National Government. It is particularly important as a restraint on Executive Branch officers: If not for the Appropriations Clause, "the executive would possess an unbounded power over the public purse of the nation; and might apply all its monied resources at his pleasure." *See, United States Dep't of the Navy v. Fed. Labor Rels. Auth.*, 398 U.S. App. D.C. 476, 484, 665 F.3d 1339, 1347 (2012) (quoting 3 Joseph Story, Commentaries on the Constitution of the United States § 1342, at 213-14 (1833)).

### B. The CFPB.

14. On, or about, July 21, 2010, in reaction to the 2008 financial crises, 12 U.S.C.S. § 5481, more commonly known as the Dodd-Frank Act, was enacted, in part creating the CFPB. Under this Act, "Congress transferred to the Bureau administrative and enforcement authority over 18 federal statutes which prior to the Act were overseen by seven different agencies" *See, Cmty. Fin. Servs. Ass'n of Am. v. Consumer Fin. Prot. Bureau*, 51 F.4th 616, 623 (5th Cir. 2022). "The CFPB is an independent bureau within the Federal Reserve System, and an executive agency as defined in Section 105 of Title 5, United States Code." *See,* Consumer Financial Protection Board, *Annual Performance Plan and Report, and Budget Overview*, 3 (February 2023).

15. The CFPB now has an annual budget of hundreds of millions of dollars. According to their Annual Performance Plan and Report, "[t]he CFPB's operations are funded principally by transfers made by the Board of Governors of the Federal Reserve System (Board)….." *See, Id* at 8. In 2023 they will be authorized to transfer up to $750,900,000. *See, Id.* In addition to the moneys transferred from the Federal Reserve Board, the CFPB is also authorized by the Dodd-Frank Act to "collect and retain civil penalties obtained from any person or entity

in a judicial or administrative action" *See, Id* at 18. "In FY 2022, the CFPB collected $172.5 million in civil penalties, and it has collected $1.8 billion in FY 2023 year-to date." *See, Id*.

16. "Funds transferred from the Federal Reserve System are deposited into the Bureau of Consumer Financial Protection Fund (Bureau Fund) at the Federal Reserve Bank of New York." *See, Id* at 8. The civil penalty "funds are [also] deposited into the Consumer Financial Civil Penalty Fund (CPF), which is also maintained at the Federal Reserve Bank of New York." *See, Id* at 18. Once transferred to the Bureau Fund the funds are "available in a subsequent fiscal year without further legislative action." *See, Id*.

*C. CFPB's Funding Structure Is A Violation Of The Appropriations Clause.*

17. This country was founded with strong safeguards against any particular branch of the government gaining too much power. The principle that we should separate the powers of the various branches of government was embraced, "not to promote efficiency but to preclude the exercise of arbitrary power. The purpose was, not to avoid friction, but, by means of the inevitable friction incident to the distribution of the governmental powers among three departments, to save the people from autocracy." *See, Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 613-14, 72 S. Ct. 863, 898-99 (1952) (quoting *Myers v. United States*, 272 U.S. 52, 293, 47 S. Ct. 21, 84 (1926).) This "system of separated powers and checks and balances established in the Constitution was regarded by the Framers as 'a self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other.'" *See, Morrison v. Olson*, 487 U.S. 654, 693, 108 S. Ct. 2597, 2620 (1988) (quoting *Buckley v. Valeo*, 424 U.S. 1, 122, 96 S. Ct. 612, 684 (1976)).

18. "Unlike most other agencies, the CFPB does not rely on the annual appropriations process for funding. Instead, the CFPB receives funding directly from the Federal Reserve, which is itself funded outside the appropriations process through bank assessments." *See, Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2193-94 (2020). The Federal Reserve receives fees for check clearing, funds transfers, and automated clearinghouse operations. Federal Reserve System Publication. *See, The Fed Explained What the Central Bank Does*. 11ed., 4 (2021). By having the funding come from the Federal Reserve rather than the Congressional appropriations process, the CFPB is able to operate with limited Congressional oversight. However, this funding method is unconstitutional. "The CFPB's budgetary independence violates this essential maxim of separated powers. Indeed, just as the CFPB Director's removal protections unconstitutionally insulated the agency from executive control, so, too, does its budgetary independence unconstitutionally eliminate legislative control over the CFPB." *See, Consumer Fin. Prot. Bureau v. All Am. Check Cashing, Inc.*, 33 F.4th 218, 225 (5th Cir. 2022). By allowing the CFPB to bypass the annual appropriates process, the Dodd-Frank Act removes the natural limit provided by "a valid reservation of congressional control over funds in the Treasury." *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 425, 110 S. Ct. 2465, 2472 (1990).

## *VI. CLAIM FOR RELIEF*

## *THE CURRENT FUNDING MECHANISM VIOLATES THE APPROPRIATIONS CLAUSE OF THE UNITED STATES CONSTITUTION*

19. Plaintiff, Ana Carolina Serrano, reiterates and adopts each and every one of the above paragraphs in the previous sections as if set forth herein.

20. The enforcement action by the CFPB was brought using funds not properly appropriated in accordance with law.

21. The Appropriations Clause requires legislative appropriations prior to executive expenditures. *See,* U.S. Const. art. 1, §9, cl 7.

22. "Any exercise of a power granted by the Constitution to one of the other Branches of Government is limited by a valid reservation of congressional control over funds in the Treasury." *See, Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 425, 110 S. Ct. 2465, 2472 (1990). However, unlike the process used for the vast majority of executive agencies, the CFPB is not required to participate in the appropriations process that would provide this congressional control. Instead, it requisitions funds directly from the Federal Reserve, with neither annual oversight, nor annual involvement from Congress. As an agency operating under executive authority, this fiscal independence from the legislative body violates the separation of powers.

23. In fact, the CFPB's funding differs from other noted similarly independent agencies (ex. the Federal Reserve Board, the Federal Deposit Insurance Corporation, and the Office of the Comptroller of the Currency). "Even among self-funded agencies, the Bureau is unique. The Bureau's perpetual self-directed, double-insulated funding structure goes a significant step further than that enjoyed by the other agencies on offer." *See, Cmty. Fin. Servs. Ass'n of Am. v. Consumer Fin. Prot. Bureau*, 51 F.4th 616, 641 (5th Cir. 2022). It is this "sef-directed, double-insulated funding structure" which unconstitutionally violates the Appropriations Clause.

# VII. VIOLATION OF THE APPROPRIATIONS CLAUSE IS CAUSING HARM TO THE PLAINTIFF

24. Plaintiff, Ana Carolina Serrano, reiterates and adopts each and every one of the above paragraphs in the previous sections as if set forth herein.

25. On information and belief, the CFPB uses the unconstitutionally obtained funds it receives from the *Federal* Reserve to fund its programs and pay its personnel. As of June 30, 2023 it had obligations totaling $311,361,764 for "personnel compensation and benefits." *See, Exhibit 7, usaspending.gov*. But for the continued funding of these attorneys and agents, the CFPB would not be able to cause the incipient harm likely to befall Plaintiff. *See, Exhibit 1* at 2.

26. The CFPB's expenditure of funds, obtained in violation of the constitution, in pursuing its suit against Libre, is a direct cause of the foreseeable harm to Plaintiff. In their 4th Circuit suit against Nexus and Libre, the CFPB and co-plaintiff states are requesting civil money penalties of up to $111,135,620 per defendant for violations of the Consumer Financial Protection Act (hereinafter, the "CFPA") as well as $24,390,000 for violations of state statutes. It is Plaintiff's understanding and belief that Nexus and Libre are currently able to meet their expenses in a manner that allows them to continue conducting business. However, Plaintiff has been informed, and on information and belief, alleges that Nexus and Libre do not have the hundreds of millions of dollars needed to pay those penalties. Instead, she believes they would be required to file for bankruptcy. If Libre is forced to file for bankruptcy by the imposition of these fines Plaintiff believes the surety bonds upon which her freedom is predicated are likely to be revoked and she could be detained for an indefinite period of time until her final hearing. *See, Exhibit 1* at 2.

## VII. PRAYER FOR RELEIF

27. Plaintiff asks this Court to enter judgment in her favor and to provide the following:

    a. a declaration that the CFPB's funding structure, upon which it relies to exercise its enforcement authority, violates the Appropriations Clause;

    b. an injunction ordering the CFPB to cease accepting funds in violation of the Appropriations Clause until such time as the United States Supreme Court renders its decision in *Cmty. Fin. Servs. Ass'n of Am. v. Consumer Fin. Prot. Bureau*;

    c. a temporary restraining order, enjoining the CFPB from pursuing any enforcement of a final judgment regarding penalties in *Consumer Fin. Prot. Bureau v. Nexus Servs.*, Civil Action No. 5:21-cv-00016, 2023 U.S. Dist. (W.D. Va. 2023) until such time as the United States Supreme Court renders its decision in *Cmty. Fin. Servs. Ass'n of Am. v. Consumer Fin. Prot. Bureau;*

    d. an injunction preventing the CFPB from pursuing any enforcement of a final judgment regarding penalties in *Consumer Fin. Prot. Bureau v. Nexus Servs.*, Civil Action No. 5:21-cv-00016, 2023 U.S. Dist. (W.D. Va. 2023) until such time as the United States Supreme Court renders its decision in *Cmty. Fin. Servs. Ass'n of Am. v. Consumer Fin. Prot. Bureau*;

    e. an injunction ordering that no other individual, organization, or governmental body cause funds obtained in violation of the Appropriations Clause to be spent until such time as the United States Supreme Court renders its decision in *Cmty. Fin. Servs. Ass'n of Am. v. Consumer Fin. Prot. Bureau;*

    f. attorneys fees and costs incurred in relation to this case; and

    g. all other relief to which Plaintiff is entitled to that the Court deems just and proper.

Dated: August 12, 2023

                                                      Respectfully submitted,
                                                      David K. Sergi & Associates, P.C.

                                                      By: */s/ David K. Sergi*
                                                      **DAVID K. SERGI** – Attorney in Charge
                                                      Texas Bar No. 18036000
                                                      Federal Bar No. 755
                                                      Email: david@sergilaw.com
                                                      JESSICA L. COUSINEAU
                                                      OS Bar No. 012374
                                                      Federal Bar No.
                                                      Email: jessica@sergilaw.com

                                                      329 S. Guadalupe St.
                                                      San Marcos, TX 78666
                                                      Tel. (512) 392-5010
                                                      Fax. (512) 392-5042
                                                      Counsel for Plaintiff: ANA CAROLIA SERRANO